**Liberato VALLEJOS, Plaintiff,**

v.

**Bruce G. BARBER, as District Director of Immigration and Naturalization Service, San Francisco, California, Defendant.**

**Simplicio Marcial R. CAWAGDAN, Plaintiff,**

v.

**Bruce G. BARBER, as District Director of Immigration and Naturalization Service, San Francisco, California, Defendant.**

**Nos. 35710, 35711.**

United States District Court
N. D. California, S. D.

Nov. 26, 1956.

Fallon & Hargreaves, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for defendant.

## GOODMAN, District Judge.

These causes tender questions concerning the immigration status of natives of the Philippine Islands who departed from the Islands enroute to the continental United States while they were United States nationals, but, because the Philippine Independence Act, 48 Stat. 456, 48 U.S.C. 1231 et seq. (1940 Ed.), became effective while they were at sea, arrived here as aliens.

The two causes reach this Court in different postures. Plaintiff Vallejos arrived in the continental United States on May 1, 1934 a few hours after the Philippine Independence Act became effective. Pending the issuance of new immigration regulations pursuant to that Act, he was paroled into the United States. Thereafter his whereabouts were unknown to the Immigration and Naturalization Service until 1955 when he was located and arrested in deportation proceedings. The proceedings culminated in an order of deportation, which was affirmed by the Board of Immigration Appeals. The order, as affirmed, directed his deportation pursuant to two statutory provisions: (1) Pursuant to Section 241(a) (1) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a) (1), in that he was at the time of entry within a class of aliens excludable by the then existing law, to wit, an immigrant not in possession of an immigration visa

as required by Section 13(a) of the Immigration Act of 1924, 8 U.S.C. § 213(a), 1946 Ed.; (2) Pursuant to Section 241 (a) (4) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. 1251(a) (4), in that he had been, since entry, convicted of two crimes involving moral turpitude. A review of this order pursuant to the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C.A. § 1009, is sought in this proceeding.

Plaintiff Cawagdan arrived in the continental United States on May 9, 1934 more than a week after the Philippine Independence Act became effective. He was held for a Board of Special Inquiry which, on May 19, 1934, ordered him excluded on the grounds that: (1) he was an immigrant not in possession of an immigration visa; (2) he was unable to read in any language or dialect; and (3) he had come in violation of the contract labor provisions of Section 3(h) of the Immigration Act of 1917, 8 U.S.C. 136(h), 1946 Ed. Pending an appeal, he was paroled into the continental United States. On appeal to the Secretary of Labor, the order was affirmed on the two grounds that he was an immigrant not in possession of an immigration visa and was unable to read in any language or dialect. In the meantime his whereabouts became unknown to the Immigration and Naturalization Service. On April 3, 1956 he was at last taken into custody for deportation pursuant to the exclusion order of May 19, 1934. Having failed in an attempt to have the exclusion proceedings reopened and terminated, he now seeks a review of the exclusion order, pursuant to the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C.A. § 1009.[1]

The sudden change in the status of plaintiffs from nationals to aliens while they were enroute to the continental United States from the Philippines presented a unique situation not within the contemplation of the immigration statutes. In

---

1. Although the Government has not questioned the Court's jurisdiction to review the long outstanding order pursuant to the Administrative Procedure Act, the Court deemed it appropriate to conduct its own inquiry and has concluded that such jurisdiction exists. Shung v. Brownell, 97 U.S.App.D.C. 25, 227 F.2d 40.

my opinion, the Immigration and Naturalization Service, in arriving at its decision as to both plaintiffs, gave inadequate consideration to the language of the applicable statutes and arrived at erroneous conclusions.

■ When plaintiffs left the Philippines prior to the effective date of the Philippine Independence Act, for purposes of the immigration laws, they were United States nationals. The Philippines were then islands under the jurisdiction of the United States. Barber v. Gonzales, 1954, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009. Section 8(a) of the Philippine Independence Act, which became effective, upon its ratification by the Philippine legislature,' while they were at sea, provided: "For the purposes of the Immigration Act of 1917, the Immigration Act of 1924 (except section 13(c)), this section, and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens. For such purposes the Philippine Islands shall be considered as a separate country and shall have for each fiscal year a quota of fifty."

The common ground relied upon by the Immigration and Naturalization Service in support of both the deportation order against Vallejos and the exclusion order against Cawagdan is that when they arrived in the continental United States they were immigrants not in possession of immigration visas. The statute then in effect which required immigration visas and defined the term "immigrant" was the Immigration Act of 1924. Section 13(a) of that Act, 8 U.S.C. § 213(a), 146 Ed. provided that "no immigrant shall be admitted to the United States unless he (1) has an unexpired immigration visa * * *." Section 3, 8 U.S.C. § 203, 1946 Ed., provided that the term "immigrant" means, with certain exceptions here immaterial, "any alien departing from any place outside the United States destined for the United States."

Section 28(a), 8 U.S.C. § 224(a), 1946 Ed., provided that: "The term 'United States,' when used in a geographical sense, means the States, the Territories of Alaska and Hawaii, the District of Columbia, Puerto Rico, and the Virgin Islands." Section 28(b), 8 U.S.C. § 224 (b), 1946 Ed., provided that: "The term 'alien' includes any individual not a native-born or naturalized citizen of the United States, but this definition shall not be held to include citizens of the islands under the jurisdiction of the United States."

■■ In departing from the Philippine Islands, plaintiffs departed from a place outside the United States, as it is defined in the 1924 Act. However, when they departed, they were not aliens as that term is defined in the 1924 Act since they were citizens of islands then under the jurisdiction of the United States. The plain language of the Act's definition of "immigrant" encompasses only persons who were aliens at the time they departed for the United States. The Government has offered no reason to otherwise interpret the definition. Practical considerations explain the Government's difficulty in this regard. Immigration visas are required as a means of preliminarily screening aliens desiring to immigrate to the United States to determine in advance, if possible, their admissibility to this country. Futile journeys and unnecessary expenses are thereby avoided. Visas are issued only to aliens. The statutory purpose would not be furthered by requiring visas of persons whose status as nationals at the time of departure for the United States made such visas clearly unnecessary and indeed unobtainable. The conclusion of the Immigration and Naturalization Service that plaintiffs were immigrants required by the Immigration Act of 1924 to have immigration visas cannot be sustained.

The alternative finding by the Immigration and Naturalization Service that plaintiff Cawagdan was excludable as an illiterate was ostensibly based on provisions of the Immigration Act of 1917, 39

Stat. 874. Section 3 of that Act, 8 U.S.C. § 136, 1946 Ed., provided that: "The following classes of aliens shall be excluded from admission into the United States: * * * (o) All aliens over sixteen years of age, physically capable of reading, who cannot read the English language, or some other language or dialect, including Hebrew or Yiddish: * * *." Section 1 of the Act, 8 U.S.C. § 173, 1946 Ed., provided that: "The word 'alien' wherever used in this Act shall include any person not a native-born or naturalized citizen of the United States; but this definition shall not be held to include citizens of the islands under the jurisdiction of the United States. The term 'United States' shall be construed to mean the United States, and any waters, territory, or other place subject to the jurisdiction thereof, except the Isthmian Canal Zone; but if any alien shall leave the Canal Zone or any insular possession of the United States and attempt to enter any other place under the jurisdiction of the United States, nothing contained in this chapter shall be construed as permitting him to enter under any other conditions than those applicable to all aliens."

■ Since plaintiff Cawagdan was a native of the Philippines he had always been within the United States as defined in the Act of 1917. The final proviso of that definition was inapplicable to him because he was not an alien when he left the Philippines. There was thus no statutory basis for excluding him from the continental United States as an illiterate.

■■ The conclusion of the Immigration and Naturalization Service that plaintiff Vallejos is deportable pursuant to Section 241(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1251(a), as an alien convicted after entry of two crimes involving moral turpitude is in conflict with the decision of the Supreme Court in Barber v. Gonzales, 1954, 347 U.S. 637, 74 S.Ct. 822, 825, 98 L.Ed. 1009. In Gonzales, the Supreme Court construed the word "entry" as used in Section 19(a) of the Immigration Act of 1917, 8 U.S.C. § 155(a), 1946 Ed., the predecessor of Section 241(a) of the Immigration and Nationality Act of 1952. The Court, quoting from an earlier decision, stated that: " 'The word "entry" [in § 19(a)] by its own force implies a coming from outside. The context shows that in order that there be an entry within the meaning of the act there must be an arrival from some foreign port or place. There is no such entry where one goes to sea on board an American vessel from a port of the United States and returns to the same or another port of this country without having been in any foreign port or place.' " This concept of entry, the Court added, was codified by Congress in the Immigration and Nationality Act of 1952. Section 101(a)(13) of the 1952 Act, 8 U.S.C.A. § 1101(a)(13), provides that "The term 'entry' means any coming of an alien into the United States, from a foreign port or place or from an outlying possession * * *." "Outlying possession" is defined in Section 101(a)(29), 8 U.S.C.A. § 1101(a)(29), as American Samoa and Swain Island.

The Supreme Court's interpretation of the term "entry" makes immaterial the fact that plaintiff Vallejos did not arrive in the continental United States until after the Philippines acquired the status of a foreign country pursuant to the provisions of the Philippine Independence Act. Since he left the Philippines prior to the effective date of that Act, he was never in any foreign port or place. The Court's holding that there is no "entry" " 'where one goes to sea on board an American vessel from a port of the United States and returns to the same or another port of this country without having been in any foreign port or place' " is squarely applicable to plaintiff Vallejos.

Since there is no statutory basis for any of the grounds supporting either the exclusion order against Cawagdan or the deportation order against Vallejos, both orders are vacated.